UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| ER GROUP LLC, <br><br> Plaintiff, <br><br> v. <br><br> CHARLES KITCHEN, et al., <br><br> Defendants. | Case No. 2:25-CV-472-GSL-AZ |

**OPINION AND ORDER**

Plaintiff launched his business, Engineered Rigging ("ERigging"), as a subsidiary of Defendants' company, Kitchen's Crane, in 2014. [DE 2-1, Page 2]. Since then, the relationships between Plaintiff and Defendants have deteriorated, the companies split, and multiple lawsuits have ensued in state, and now in federal, court. In this matter, Plaintiff filed his Complaint at [DE 1] and his First Motion for a Preliminary Injunction at [DE 2]. Defendants responded to Plaintiff's First Motion for a Preliminary Injunction at [DE 13]. Plaintiff replied to Defendants at [DE 16], to which Defendants Sur-Replied at [DE 19]. Plaintiff then filed their First Motion for Leave to File Sur-Reply at [DE 20] and which the Court GRANTS now. The Court had a hearing on the merits of the preliminary injunction October 29, 2025, reviewed the briefing, and is now ready to rule.

**BACKGROUND**

According to Plaintiff, 48 hours before ERigging was formed as a subsidiary of Defendants' company, Defendants purchased and registered the domain name "engingeeredrigging.com" for use as the URL for Plaintiff's business. [DE 1, Page 3; DE 2-1, at 2-3]. "Defendants paid the initial URL maintenance fee and possessed the login credentials for

same." [DE 2-1 at 3]. After the subsidiary's creation, Plaintiff continued working for Defendants for two years. [*Id.*]. Plaintiff ended his employment with Defendants in 2016, which was memorialized in a Separation Agreement addressing the ownership of the trademark for ERigging. [*Id.*].

It is unclear what transpired between 2016 and 2023, however, in 2023, Plaintiff bought out Defendants' ownership in ERigging. [*Id.*]. Just a few months later, in 2024, Defendants filed suit in state court against Plaintiff alleging fraud, breach of contract, and breach of fiduciary duties. *See Charles and Kimberly Kitchen v. Christopher and Natalia Cox and ER Group, LLC*, Case No. 64D05-2402-PL-2124, subsequently transferred to Case No. 45D01-2409-PL-575, available at MyCase.com. To resolve the state court litigation, the parties entered into a Comprehensive Settlement Agreement, found at [DE 13-40]. On June 9, 2025 the parties stipulated to, and the court ordered, dismissal with prejudice. Critical to the case at bar, the Comprehensive Settlement Agreement released both parties from future claims against each other.

> **B.** Mutual Releases. Contingent upon receipt of the Purchase Price by the Kitchens, the parties agree to mutual releases as follows:
>
> **i.** The Kitchens and Kitchen's Crane release the Coxes, ER Group, and 300 Industrial from: (1) any and all claims, causes of action, demands, costs, expenses, losses, damages, or other monetary obligations which were, or could have been, asserted in the Litigation; (2) any and all claims, causes of action, demands, costs, expenses, losses, damages, or other monetary obligations arising out of the Kitchens' ownership of any interest in ER Group or 300 Industrial; (3) any and all claims, causes of action, demands, costs, expenses, losses, damages, or other monetary obligations arising out of the Kitchens' status as employees or officers of ER Group or 300 Industrial; and (4) any and all other liabilities, claims or obligations of any kind existing up to and including the date of this Agreement, except as set forth in Section III(B)(iii) below.

>    **ii.** The Coxes, ER Group, and 300 Industrial release the Kitchens and Kitchen's Crane from: (1) any and all claims, causes of action, demands, costs, expenses, losses, damages, or other monetary obligations which were, or could have been, asserted in the Litigation; (2) any and all claims, causes of action, demands, costs, expenses, losses, damages, or other monetary obligations arising out of the Kitchens' ownership of any interest in ER Group or 300 Industrial; (3) any and all claims, causes of action, demands, costs, expenses, losses, damages, or other monetary obligations arising out of the Kitchens' status as employees or officers of ER Group or 300 Industrial; and (4) any and all other liabilities, claims or obligations of any kind existing up to and including the date of this Agreement, except as set forth in Section III(B)(iii) below.

[DE 13-40, Page 4].

Four months after the execution of the Comprehensive Settlement Agreement, on October 10, 2025, Plaintiff filed his Complaint, [DE 1], and First Motion for Preliminary Injunction, [DE 2] in this federal Court, alleging that Defendants are, and have admitted to, infringing Plaintiff's trademark engineeredrigging.com and Plaintiff's trademark domain name extension @engineeredrigging.com. Plaintiffs also allege that Defendants are, and have admitted to, cybersquatting. The Court will analyze each set of allegations in turn.

## **LEGAL STANDARD**

A preliminary injunction is a "very far-reaching power, never to be indulged in except in a case clearly demanding it." *Cassell v. Snyders*, 990 F.3d 539, 544 (7th Cir. 2021) (quoting *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S. of Am., Inc.,* 549 F.3d 1079, 1085 (7th Cir. 2008)). To obtain an injunction, a plaintiff "must make a threshold showing that: (1) absent preliminary injunctive relief, he will suffer irreparable harm in the interim prior to a final resolution; (2) there is no adequate remedy at law; and (3) he has a reasonable likelihood of success on the merits." *Tully v. Okeson*, 977 F.3d 608, 612-13 (7th Cir. 2020) (quoting *Turnell v. CentiMark Corp.*, 796 F.3d 656, 662 (7th Cir. 2015)). The showing of likelihood of success on

the merits must be strong, which "normally includes a demonstration of how the applicant proposes to prove the key elements of its case." *Tully*, 977 F.3d at 612-13 (quoting *Ill. Republican Party v. Pritzker*, 973 F.3d 760, 762-63 (7th Cir. 2020)). If the plaintiff makes these threshold showings, the court "consider[s] the balance of harms between the parties and the effect of granting or denying a preliminary injunction on the public interest." *Tully*, 977 F.3d at 612-13 (quotation omitted).

## DISCUSSION

### I.     Trademark Infringement

The Court will first discuss the Separation Agreement which allegedly addressed the ownership of the trademark for ERigging back in 2016. [DE 2-1 at 3]. The Separation Agreement is found at [DE 2-9] and is almost entirely redacted. The unredacted section reads:

> **g.** PSC to dissolve current ERigging (or any version thereof currently wholly owned by PSC) entities that are in place in mutually agreed timeframe between Paul Smith and Christopher Cox.
> **h.** New ER entity to have all naming, website, trademark, logo rights, exclusively (PSC does not have any rights to any new ER entity established unless purchased or agreed upon.)

[DE 2-9]. Plaintiff provides no additional commentary or evidence regarding whether the discussed dissolution and creation of the "New ER entity" ever occurred. In fact, Plaintiff goes on to allege that "[Defendants] were business partners in Engineered Rigging until Plaintiff bought them out" in December of 2023, long past 2016. [DE 2-1 at 3]. Curiously, neither Kitchen's Cranes, nor Eddy Kitchen are mentioned in the Separation Agreement, which the Court would have expected if rights of any kind were being transferred from Defendants to Plaintiff. [DE 2-9]. It is for these reasons that the Court fails to understand the significance of

4

this document. This is especially true since Plaintiff did not even begin using the trademarks at issue until 2017, which will be discussed at length in a later section. [DE 2-3; DE 2-4].

Focusing more specifically on Plaintiff's likelihood of success on the merits of his trademark claims, it remains unclear to this Court what Plaintiff trademarked, whether that protection includes the domains and email addresses at issue here, and temporally, how far back that protection applies. The Trademark Registration for Reg. No. 6,152,822 contains no mention, description, or implication that trademark protection for the specific mark includes trademark protection for the use of the words on the mark in an email address or URL. [DE 1 at 8; DE 2-3]. The same is true for Trademark Registration for Reg. No. 6,157,491. [DE 1 at 12; DE 2-4]. Plaintiff provides this Court with one case, and one sentence of explanation, supporting the proposition that domain name extension or URL trademark protection exists or is appropriate here. [DE 2-1 at 6]. The Court is not persuaded.

Plaintiff asserts "[t]rademark protection covers domain names and extensions." [*Id.* (citing *Hong Kong Yu'en E-Com. Co. Ltd. v. Individuals, Corps., Ltd. Liab. Companies, Partnerships and Unincorporated Associations Identified in Sched. "A" Hereto*, 783 F. Supp. 3d 1104 (N.D. Ill. 2025))]. However, in *Hong Kong Yu'en E-Com. Co.*, the holding was much more nuanced than that. There, the court distinguished between pre- and post-domain paths finding that "several district courts outside of this district have agreed with the Sixth Circuit's specific holding that URL post-domain paths are unlikely to support trademark infringement claims." *Hong Kong Yu'en E-Com. Co.*, 783 F. Supp. 3d at 1108. The court then went on to say "[t]he question at this stage is not whether Funlingo is right that words in a URL's post-domain path cannot give rise to trademark infringement, and therefore I do not resolve that question

5

here." *Id.* The Court disagrees with Plaintiff that *Hong Kong Yu'en E-Com* stands for the proposition that broadly, "[t]rademark protection covers domain names and extensions."[1]

Notwithstanding the Court's concern that trademark protection may not even exist here, Plaintiff cannot establish a likelihood of success on the merits of his trademark domain name claim for another, independent reason. Plaintiff alleges that Defendants are infringing Plaintiff's trademark domain name extension "@engineeredrigging.com" to redirect consumers to their separate, competing business, Kitchen's Cranes. [DE 2-1]. Defendants respond that the Comprehensive Settlement Agreement included a broad release of claims which bars suit here; the only exception was for a breach of the Comprehensive Settlement Agreement or associated Redemption Agreements, which is not a claim asserted by Plaintiff. [DE 13 at 12]. Plaintiff, both in his briefing and at the hearing, vehemently contests this, arguing that the events at issue here did not occur until more than a month after the Comprehensive Settlement Agreement was signed, therefore making it impossible to have previously contemplated or brought these claims. [DE 16].

To understand the scope of the Comprehensive Settlement Agreement, the Court reviewed the briefing and legal claims at issue in the underlying state case. In the underlying state case, Case No. 45D01-2409-PL-575, available on MyCase.com, Plaintiff here, but Defendant in the state court matter, ER Group moved for an injunction, alleging that:

> At some time in May of 2023, without permission, or informing anyone at ER Group, Eddy and Kimberly diverted all emails that were originally sent to ER Group's marketing email account (Info@engineeredrigging.com), to his personal email account (eddy@engineeredrigging.com).

---

[1] Plaintiff does not clarify whether his trademark infringement claims involve pre- or post-domain paths, making *Hong Kong Yu'en E-Com* even less relevant.

*See* Case No. 45D01-2409-PL-575, Memorandum of Law In Support of Motion for Preliminary Injunction. In their Motion for a Preliminary Injunction in the federal case, Plaintiff makes almost identical claims, alleging that Defendants requested all emails addressed to "@Engineeredrigging.com" be redirected to "info@engineeredrigging.com," "sales@engineeredrigging.com," "ap@engineeredrigging.com." [DE 2-1 at 4]. Plaintiff further alleges:

> On the same day, Defendants commandeered and misdirected all emails sent to Plaintiff's business under "@engineeredrigging.com" and Plaintiff has been unable to access any emails to these extensions since then. All emails sent to @engineeredrigging.com are not received by the employees and officers of Plaintiff.

[*Id.*].

The allegations here regarding the diversion of emails are virtually identical to the allegations in the underlying state court action, which were resolved by the Comprehensive Settlement Agreement. As a result, Plaintiff's remedy here, for Defendants' alleged breach of the Comprehensive Settlement Agreement by again wrongfully diverting emails, is arbitration, not federal litigation.

Moving to the allegations that Defendants are infringing Plaintiff's trademark URL "engingeeredrigging.com," this claim fares no better. [DE 2-1]. Plaintiff argues that trademark ownership is not acquired by federal or state registration, but rather from prior appropriation and actual use in the market. [DE 2-1 at 5 (citing *S.C. Johnson & Son, Inc. v. Nutraceutical Corp.*, 835 F.3d 660, 665 (7th Cir. 2016))]. Plaintiff then asserts that "[s]ince 2014, Plaintiff has adopted and continuously used the trademark 'ENGINEERED RIGGING' (the 'ENGINEERED RIGGING Trademark') in various forms and styles in applications, including letterhead, invoices, quotes, business documents, advertising and promotional materials to identify and

7

promote Plaintiff Services in intrastate and interstate commerce." [DE 1 at 1-2; DE 2-1 at 2]. Plaintiff makes similar arguments in their sur-reply, and further asserts that he "first introduced the mark into commerce and has, to date, exclusively used the mark in a continuous, uninterrupted fashion." [DE 20-1, Page 2; DE 2-1 at 6]. However, Plaintiff fails to provide any factual or evidentiary support for these statements, which are in direct contention with the Trademark Registrations, which *were* provided by Plaintiff and are found at [DE 1 at 8; DE 2-3] and [DE 1 at 12; DE 2-4].

According to the Trademark Registration for Reg. No. 6,152,822, Plaintiff's trademark was first used in January of 2017, and was not used in commerce until January of 2018. [DE 1 at 8; DE 2-3 at 1]. Similarly, the Trademark Registration for Reg. No. 6,157,491 states that Plaintiff's trademark was first used, including in commerce, in January of 2019. [DE 1 at 12; DE 2-4 at 1]. Therefore, the Court is not persuaded by Plaintiff's assertion that he began using either trademark as early as 2014.

Beyond this, Plaintiff himself asserts that "Defendants paid the initial URL maintenance fee and possessed the login credentials for same." [DE 2-1 at 3]. Attached to the Complaint, Plaintiff included an affidavit from Charles Kitchen, stating that Charles paid initial URL fee and continued paying the fees through 2024, stating "[a]t no point has ER Group paid my wife, Kitchen's Crane, or myself to acquire ownership of the domain." [DE 1 at 17-18]. Plaintiff also provided this Court with invoice charges going back to 2014 showing that the Kitchens paid and were listed as the contact for the URL "engineeredrigging.com." [DE 1 at 19-42]. Given Plaintiff's own statements and evidence, it would appear to this Court that it was Defendants who first acquired, registered, and began using the URL "engineeredrigging.com," even if Defendants were doing so, at least for some time, at the direction of and in benefit to Plaintiff.

8

Because Plaintiff's own evidence indicates that he did not begin using either trademark until 2017 or 2019, and because Defendants first acquired, registered, and began using the URL "engineeredrigging.com," Plaintiff cannot establish a likelihood of success on the merits. Plaintiff's request for a preliminary injunction based on Defendants' infringement of the "engineeredrigging.com" URL is denied.

## II.     Cybersquatting

Finally, Plaintiff requests a preliminary injunction to combat Defendants' cybersquatting. The Anti-Cybersquatting Protection Act was enacted in 1999 to combat deliberate, bad-faith, and abusive registration of Internet domain names in violation of the rights of trademark owners, a practice known as cybersquatting. *Nexus Staffing, Inc. v. Nexus Emp. Sols. Plus of Ind., Inc.*, 2021 U.S. Dist. LEXIS 269566, at *4-5 (N.D. Ind. Mar. 31, 2021). The relevant portion of the Act provides:

> (1)(A) A person shall be liable in a civil action by the owner of a mark, including a personal name which is protected as a mark under this section, if, without regard to the goods or services of the parties, that person (i) has a bad faith intent to profit from that mark, including a personal name which is protected as a mark under this section; and (ii) registers, traffics in, or uses a domain name that (I) in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark; (II) in the case of a famous mark that is famous at the time of registration of the domain name, is identical or confusingly similar to or dilutive of that mark; or (III) is a trademark, word, or name protected by reason of section 706 of Title 18 or section 220506 of Title 36.

15 U.S.C. § 1125(d)(1)(A). To state a claim for cybersquatting, a plaintiff must allege that (1) it had a distinctive or famous mark at the time the domain name was registered by the defendant, (2) the defendant registered, trafficked in, or used a domain name that is identical or confusingly

similar to plaintiff's mark, and (3) the defendant had a bad faith intent to profit from that mark. *Nexus Staffing, Inc.*, 2021 U.S. Dist. LEXIS 269566, at *4-5.

Here, Plaintiff's claim fails at the first element. Plaintiff had to allege it had a distinctive or famous mark at the time the domain name was registered by Defendant in 2014, which Plaintiff failed to do. According to the Trademark Registration for Reg. No. 6,152,822, Plaintiff's trademark was first used in January of 2017, and was not used in commerce until January of 2018. [DE 1 at 8; DE 2-3 at 1]. Similarly, for Trademark Registration for Reg. No. 6,157,491, Plaintiff's trademark was first used, including in commerce, in January of 2019. [DE 1 at 12; DE 2-4 at 1]. Therefore, the Court is not persuaded by Plaintiff's assertion that he had a distinctive or famous mark at the time Defendants registered the URL, notably, on behalf of Plaintiff, in 2014. For this reason, Plaintiff cannot establish a likelihood of success on the merits. Plaintiff's request for a preliminary injunction based on Defendants' alleged cybersquatting is denied.

## CONCLUSION

Plaintiff has failed to satisfy the elements required for a preliminary injunction to issue. For the foregoing reasons, Plaintiff's [DE 20] is GRANTED, but Plaintiff's [DE 2] is DENIED.

SO ORDERED.

ENTERED: December 9, 2025

/s/ GRETCHEN S. LUND
Judge
United States District Court